IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MIGUEL RUIZ (M-49463),** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | No. 18 C 4429 |
| v. ) | |
| ) | Hon. Jorge L. Alonso |
| **JACQUELINE LASHBROOK,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, Illinois prisoner Miguel Ruiz, through counsel, petitions this Court for federal habeas corpus relief under 28 U.S.C. § 2254. Challenging his Cook County convictions for first-degree murder and aggravated discharge of a firearm, he argues that he received insufficient warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), before he made his videotaped custodial statements to police officers. Respondent has responded, and Petitioner has replied. For the reasons below, this Court denies the § 2254 petition on the merits and declines to issue a certificate of appealability.

### BACKGROUND

The evidence at trial showed the following.[1] On September 15, 2011, Petitioner and Alfredo Carranza (also known as Colors), members of the Spanish Gangster Disciples, decided to drive into a rival gang's neighborhood and shoot a rival gang member. *People v. Ruiz*, 2017 IL App (1st) 150073-U, ¶¶ 10-13 (Ill. App. Ct. July 7, 2017). Colors exited the vehicle and approached Andre Ephrame, who Colors did not know, but who he believed was a member of the

---

[1] The background facts are taken from the Illinois appellate court opinion in Petitioner's direct appeal following his jury trial. *People v. Ruiz*, 2017 IL App (1st) 150073-U, ¶ 10; *see also Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) ("We take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review and [Petitioner] has not rebutted this presumption.") (citing 28 U.S.C. § 2254(e)(1)).

Latin Kings. *Id.* at ¶¶ 10-17. Colors shot Ephrame and returned to the vehicle, at which time Petitioner drove away. *Id.* Upon hearing police sirens, Petitioner pulled over. Colors stated he was going to run and take the blame for the shooting. *Id.* at ¶ 16. After exiting the vehicle, Colors shot at Officers Alejandro Acevedo and Charlotte Gonzalez, the officers who curbed the vehicle. *Id.* Officer Acevedo returned fire, followed Colors into an alley, and continued to fire until Colors fell to the ground. *Id.* at ¶ 17. Following a jury trial, Petitioner was found guilty, on an accountability theory, of first-degree murder of Ephrame and aggravated discharge of a firearm in the direction of an officer. He was sentenced to 45 years' imprisonment. *Id.* at ¶ 18.

Prior to trial, Petitioner filed a motion to suppress the videotaped statements he had given to officers following his arrest. *Id.* at ¶¶ 3-9. He argued that the *Miranda* warnings he received prior to his statements were insufficient. *Id.* The following facts were determined at the suppression hearing. Detective Anthony Green first questioned Petitioner around 11:30 p.m. on the night of the offense. *Id.* at ¶ 4. Before doing so, Green recited *Miranda* warnings from memory. *Id.* The videotaped statement showed the following exchange:

> Q: You have the right to remain silent. Do you understand that?
>
> A: Uh-huh.[ ]
>
> Q: Do you understand that you have the right to an attorney?
>
> A: Yeah.
>
> Q: Do you understand that you have the right to an attorney and have an attorney present during questioning?
>
> A: Yeah.
>
> Q: Do you understand that anything you say can be used against you in court? You understand that?
>
> A: Yes.

> Q: You understand that if you can't afford an attorney that [the] state will provide you one. You understand that?
>
> A: Yes.

*Id.* at ¶¶ 4-5. The following morning, at 6:50 a.m., Detective John Folino questioned Petitioner and gave the following admonishments, also from memory:

> Q: Do you understand that you have the right to remain silent?
>
> A: Yes, I do.
>
> Q: You do understand that?
>
> A: (INDICATING) [ ]
>
> Q: Do you understand that anything you say can and will be used against you in a court of law?
>
> A: Yes.
>
> Q: Okay. Do you understand that you have the right to an attorney? You have a right to a lawyer?
>
> A: Yes.
>
> Q: Do you understand if you cannot afford, [or] you cannot pay for an attorney, one will be provided to you free of charge, [at] no cost to you?
>
> A: Yes.
>
> Q: Do you understand that?
>
> A: Yes, I do.

*Id.* at ¶ 6. Neither Green nor Folino read the *Miranda* warnings printed in the Chicago Fraternal Order of the Police (FOP) handbook. *Id.* at ¶¶ 5, 7.

The state trial court denied the motion to suppress upon determining that reciting *Miranda* warnings from memory was acceptable and that Petitioner's warnings sufficed since he was told: he had the right to remain silent; anything he said could be used against him; he had the right to an attorney; and an attorney would be appointed for him if he could not afford one. *Id.* at ¶ 9.

3

Petitioner's statements, wherein he explained the September 15, 2011 events described above, were played for the jury. *Id.* at ¶¶ 11-16. After he was found guilty, he filed a motion for new trial, again arguing he received insufficient *Miranda* warnings, which the trial court denied. *Id.* at ¶¶ 18-19.

On appeal, Petitioner argued the *Miranda* warnings he received were insufficient because he was not told that he had the right to consult with an attorney before giving his statements. *Id.* at ¶ 20. The Illinois appellate court rejected the claim upon determining that *Miranda* warnings need not "be given in the exact form described in that decision," and that Illinois courts had previously denied claims "that a defendant's *Miranda* warnings were defective when a defendant was not specifically advised that he had the right to have an attorney present before and during questioning." *Id.* at ¶¶ 23-24 (citing *People v. Walton*, 556 N.E.2d 892 (Ill. App. Ct. 1990), and *People v. Martinez*, 867 N.E.2d 24, 28 (Ill. App. Ct. 2007)).

Petitioner filed a petition for leave to appeal (PLA) asserting the same claim, which the Illinois Supreme Court denied without stating reasons. *People v. Ruiz*, 93 N.E.3d 1067 (Ill. 2017) (Table). He then filed the instant § 2254 petition.

## DISCUSSION

Petitioner's § 2254 petition repeats the claim he presented to the state courts—that the failure to advise him of his right to consult an attorney before the interrogation did not satisfy the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), and that his videotaped statements were thus inadmissible. (Dkt. 1, pg. 17-23.) Petitioner acknowledges that he was informed of his right both to have an attorney and to have an attorney present during the interrogation. *Id.* at 17. His *Miranda* claim is that the failure of officers to advise him that he also had the right to consult with an attorney *before* answering questions violated his Fifth Amendment right. *Id.* at 17-19. He

4

contends that the Illinois Appellate Court's decision rejecting this claim was contrary to and an unreasonable application of *Miranda* and its progeny. Petitioner is incorrect.

Because the state appellate court addressed the merits of Petitioner's claim, federal habeas relief is available only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Neither party disputes the facts of Petitioner's claim—he was told he had the right to an attorney and to have the attorney present during questioning, but was not told that he also could consult with an attorney before questioning. The only question for this Court is whether the state appellate court's denial of Petitioner's *Miranda* claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

A state-court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of th[e] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of the [Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

For a state court's application of federal law to be unreasonable, it must be "more than incorrect; it must have been objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). "'Unreasonable' in [this] context . . . means something . . . lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015). "'The more general the rule' at issue—

5

and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As long as this Court is "satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions," it should deny federal habeas relief. *Felton*, 926 F.3d at 464.

Section 2254(d)'s deferential standard of review "is intentionally difficult to meet" as it "serves important interests of federalism and comity" and reflects "a presumption that state courts know and follow the law." *Woods*, 575 U.S. at 316 (internal quotation marks and citations omitted). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The Illinois Appellate Court in Petitioner's case began its analysis with *Miranda v. Arizona*, 384 U.S. 436 (1966), noting that the Supreme Court there held that, "before conducting a custodial interrogation, law enforcement officers must administer warnings to the defendant sufficient to inform him of his privilege against self-incrimination." *Ruiz*, 2017 IL App (1st) 150073-U, ¶ 22. *Miranda* warnings, stated the appellate court, consist of "four essential elements . . . (1) the defendant must be told of his right to remain silent; (2) that anything he says may be used against him; (3) that he has the right to have counsel present before and during questioning; and (4) that he is entitled to have counsel appointed if he cannot afford one." *Id.* at ¶¶ 22-23 (quoting *People v. Martinez*, 867 N.E.2d 24, 28 (Ill. App. Ct. 2007) (citing *Miranda*, 384 U.S. at 479). The appellate court further noted that "[t]he Supreme Court, however, has 'never insisted that *Miranda* warnings be given in the exact form described in that decision . . . and that 'no

6

talismanic incantation [is] required to satisfy its strictures'" *Ruiz*, 2017 IL App (1st) 150073-U, ¶ 23 (quoting *Duckworth v. Eagan*, 492 U.S. 195, 202-03 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 359 (1981)).

Relying on Illinois cases rejecting claims that "*Miranda* warnings were defective when a defendant was not specifically advised that he had the right to have an attorney present before and during questioning," the state appellate court determined that Petitioner was sufficiently advised of his rights under *Miranda*. *Ruiz*, 2017 IL App (1st) 150073-U, ¶ 24 (citing *Martinez*, 867 N.E.2d at 28, and *People v. Walton*, 556 N.E.2d 892 (Ill. App. Ct. 1990)).[2] The state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

In *Miranda*, the Supreme Court addressed the application of the Fifth Amendment right against compulsory self-incrimination to custodial interrogation, and set out "to give concrete constitutional guidelines for law enforcement agencies and courts to follow" in order to protect the right. *Miranda*, 384 U.S. at 441-42; *see also* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . ."). After a detailed discussion of the information an individual must receive before an interrogation, the Court concluded:

> To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an

---

[2] In *Martinez*, an Illinois appellate court determined that a defendant received sufficient *Miranda* warnings when he was advised that "he had the right to an attorney and have him present during any questioning," but not that he had the right to consult with an attorney before being questioned. *Martinez*, 867 N.E.2d at 27-28. In *Walton*, the state appellate court found no constitutional violation when the officer informed the defendant he had the right to consult with an attorney but not that he had the right to have an attorney present during questioning. *Walton*, 556 N.E.2d at 893-95. Although a state court decision must not be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, § 2254(d) does not oblige the state court to cite Supreme Court cases or "even require awareness of" them. *Early v. Packer*, 537 U.S. 3, 8 (2002).

> attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Miranda*, 384 U.S. at 478-79.[3]

Before the above quoted summary of the required admonishments, the Court addressed each of the four warnings: (1) that the individual has the right to remain silent; (2) that anything he says can be used against him; (3) that he has the right to the presence of an attorney; and (4) that an attorney will be appointed for him before questioning if he cannot afford one. *Id.* at 467-79. When discussing the importance of an attorney's assistance, the *Miranda* Court focused on the interrogation itself, explaining: "The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege." *Id.* at 469. "[T]o assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process," stated the Supreme Court, "[t]the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Id.* at 469-70.[4]

> Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been

---

[3] "[T]hese procedural safeguards [a]re not themselves rights protected by the Constitution but [a]re instead measures to insure that the right against compulsory self-incrimination [i]s protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

[4] The fact that the *Miranda* Court focused on the interrogation itself does not necessarily mean the Court believed the suspect's ability to have an attorney present during the interrogation was more important than the ability to consult with an attorney before deciding whether to waive his Fifth Amendment right. Just two years before *Miranda*, the Supreme Court decided that denial of a suspect's requests to consult an attorney before and during questioning violated his Sixth Amendment right to assistance of counsel. *Escobedo v. State of Ill.*, 378 U.S. 478, 491 (1964),

>aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

*Id.* at 471-72.

As previously stated, Petitioner's *Miranda* warnings advised him of his right to have an attorney, to have the attorney present during questioning, and to have an attorney appointed for him if he could not afford one, but omitted informing him that he could consult an attorney and have one appointed *before* questioning. *Ruiz*, 2017 IL App (1st) 150073-U, ¶ 4. Although the Supreme Court has addressed the application of *Miranda* in a number of cases, mainly to determine what constitutes an interrogation and an individual's invocation of his rights, the Court has spoken to the adequacy of *Miranda* warnings and the words used therein in only a few decisions.

In *California v. Prysock*, 453 U.S. 355 (1981), the defendant was advised: "You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning," and "you have the right to have a lawyer appointed to represent you at no cost to yourself." *Id.* at 356. Officers, however, did not advise that an attorney would be appointed *before* questioning began. *Id.* at 359. The state appellate court held that the warnings failed to comply with *Miranda*'s "precise requirements, which are so easily met." *Id.* Reversing, the Supreme Court clarified that it "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given." *Id.* at 359. While the Court "stressed as one virtue of *Miranda* the fact that the giving of the warnings obviates the need for a case-by-case inquiry into the actual voluntariness of the admissions of the accused, . . . no talismanic incantation was required." *Id.* Because the defendant "was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one," his warnings sufficed. *Prysock*, 453 U.S. at 361.

9

In *Duckworth v. Eagan*, 492 U.S. 195, 198 (1989), again with respect to the right to an attorney's assistance, the defendant was told:

> You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.

*Duckworth*, 492 U.S. at 198. The Court again emphasized that "[r]eviewing courts . . . need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Id.* at 203 (citations omitted). Instead, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Id.* Duckworth's warnings, stated the Court, "touched all the bases required by *Miranda*." *Id.* at 203. The additional phrase that he would receive an attorney "if and when you go to court," did not detract from the warning that he could consult an attorney before and during questioning. *Id.* at 204-05.

Lastly, in *Florida v. Powell*, 559 U.S. 50, 53-54 (2010), the Court addressed a *Miranda* warning that, with respect to the right to counsel, informed the defendant:

> You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.

*Powell*, 559 U.S. at 54. While the defendant was told that he could consult with an attorney before being questioned and that he could exercise his rights anytime during the interrogation, he was not advised that he had the right to have the attorney present *during* questioning. *Id.*

The Court began its analysis noting *Miranda*'s concern that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent]," and the *Miranda* Court's response to that concern that "an individual held for questioning 'must be clearly informed that he has the right to consult

10

with a lawyer and to have the lawyer with him during interrogation.'" *Powell*, 559 U.S. at 60 (quoting *Miranda*, 384 U.S. at 471). Observing that prior Supreme Court decisions never "dictated the words in which the essential information must be conveyed," *id.*, the *Powell* Court concluded that the officers "did not 'entirely omi[t]' any information *Miranda* required." *Powell*, 559 U.S. at 62 (quoting *Powell*, 559 U.S. at 72 (Stevens, J., dissenting)).

According to the Court, the two warnings Powell received—that he could consult with an attorney before the interrogation and that he could use his rights anytime during the interrogation—"reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 62. "To reach the opposite conclusion," stated the Court, would result in a "reasonable suspect in a custodial setting . . . imagin[ing] an unlikely scenario[ that] he would be obliged to exit and reenter the interrogation room between each query" in order to consult with counsel. *Id*.

The Supreme Court has not considered the phrasing of *Miranda* warnings since *Powell*. Neither Petitioner nor Respondent in this case cite to a Supreme Court decision, nor has this Court found one, addressing the adequacy of a *Miranda* warning similar to Petitioner's, which informed him of right to the presence of an attorney during questioning, but which omitted expressly telling him of his right to consult with an attorney before questioning. *See* Dkts. 1, 12, 14.

Because no Supreme Court "cases confront 'the specific question presented by this case,'" the state court's decision cannot, under § 2254(d)(1), be considered "'contrary to' any holding from th[e Supreme] Court." *Woods v. Donald*, 575 U.S. 312, 317 (2015) (quoting *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam)). On § 2254 review, this Court should not "attempt to determine how" the Supreme Court would rule. *Long v. Pfister*, 874 F.3d 544, 550 (7th Cir. 2017) (en banc). "[T]he Supreme Court may resolve [Petitioner's *Miranda* claim] in favor of a defendant in [his] position. But it has not done so to date, and § 2254(d)(1) accordingly prohibits a grant of collateral

11

relief." *Id.*; *see also Woods*, 575 U.S. at 319 (in the absence of clear Supreme Court precedent, the Supreme Court "express[es] no view on the merits of the underlying" claim) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

To the extent this Court can or should go further with its analysis under § 2254(d), the state appellate decision in Petitioner's case was not an unreasonable application of clearly established Supreme Court law. Considering *Miranda* and other courts' application of *Miranda* in cases similar to Petitioner's, this Court cannot say the state court's decision was unreasonable.

As the Supreme Court explained in *Prysock*, *Duckworth*, and *Powell*, the Court "has not dictated the words in which [*Miranda*'s] essential information must be conveyed." *Powell*, 559 U.S. at 60 (citing *Prysock*, 453 U.S. at 359) ("no talismanic incantation [i]s required"). Rather, "'[t]he inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*."'" *Powell*, 359 U.S. at 60 (quoting *Duckworth*, 492 U.S. at 203) (quoting *Prysock*, 453 U.S. at 361). While the *Miranda* Court's discussion of the importance of an attorney's presence during questioning stated that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation," *Miranda*, 384 U.S. at 471, when later summarizing the warnings an accused must receive, the Court did not include the right to consult an attorney before an interrogation.

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479. Additionally, the "pattern of warnings . . . followed" by the Federal Bureau of Investigations at the time of *Miranda*, which the Supreme Court stated was "consistent with the procedure . . . [it] delineate[d]" simply stated that an accused had a right to counsel and

12

did not specifically state he had the right to both consult with an attorney before an interrogation and have the attorney present during the interrogation.[5] *Id.* at 483-84.

Given that neither *Miranda*'s summary of the required warnings nor the approved warnings used by FBI agents states that an accused must be informed of the right to consult with an attorney, the state appellate court's decision was not unreasonable in determining that the absence of such language in Petitioner's warnings did not render his *Miranda* warnings inadequate. Furthermore, as in *Powell*, to hold that Petitioner's *Miranda* warnings were insufficient, when he was informed that he had the right to an attorney and to have the attorney present during questioning, would result in a "reasonable suspect in a custodial setting . . . imagin[ing] an unlikely scenario" that he could have an attorney with him during the interrogation, but that he could not consult with him before or during the interrogation. *Powell*, 559 U.S. at 62. This Court cannot conclude based on *Miranda* and its progeny that the state court's decision was unreasonable.

This Court acknowledges that, in *United States v. Wysinger*, 683 F.3d 784 (7th Cir. 2012), the Seventh Circuit arguably took a strict approach to the language used in *Miranda* warnings. The accused in that case was informed that he had the "right to talk to a lawyer for advice before

---

[5] In response to questions from the *Miranda* Court during oral argument, the Arizona Solicitor General submitted a letter that included the FBI's Director's response to questions about the practices of FBI agents. *See Miranda*, 384 U.S. at 484-85. With respect to the pre-interrogation warnings, the FBI Director stated:

> The standard warning long given by Special Agents of the FBI to both suspects and persons under arrest is that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court. Examples of this warning are to be found in the *Westover* case at 342 F.2d 684 (1965), and *Jackson v. U.S.*, (119 U.S. App. D.C. 100) 337 F.2d 136 (1964), cert. den. 380 U.S. 935, 85 S. Ct. 1353.

> After passage of the Criminal Justice Act of 1964, which provides free counsel for Federal defendants unable to pay, we added to our instructions to Special Agents the requirement that any person who is under arrest for an offense under FBI jurisdiction, or whose arrest is contemplated following the interview, must also be advised of his right to free counsel if he is unable to pay, and the fact that such counsel will be assigned by the Judge. At the same time, we broadened the right to counsel warning to read counsel of his own choice, or anyone else with whom he might wish to speak.

*Miranda*, 384 U.S. at 484-85.

13

we ask any questions or have one—have an attorney with you during questioning." *Wysinger*, 683 F.3d at 798. "Taken literally," stated the Seventh Circuit, the warning meant that the accused "could talk to an attorney before questioning or during questioning" but not both. *Id.* The Seventh Circuit noted that "[p]erhaps this error in wording alone would not be enough" to exclude his statements "if it was otherwise clear that Wysinger properly understood his rights." *Id.* at 800. But because the interrogating officer "implied that questioning had not yet begun" when the accused asked about his rights and "repeatedly attempted to divert his attention from asserting his rights," the Seventh Circuit concluded that the inculpatory statements should have been excluded. *Wysinger*, 683 F.3d at 800 and 803.

Petitioner's *Miranda* warnings, however, differ from those in *Wysinger*. Petitioner's warnings did not present him with a choice of either an attorney's presence during questioning or consulting with the attorney before questioning. Petitioner was told that he had a right to an attorney and to have the attorney present during the interrogation. Courts addressing *Miranda* warnings similar to Petitioner's have found them sufficient.

In *United States v. Loucious*, 847 F.3d 1146 (9th Cir. 2017), the Ninth Circuit held that the pre-interrogation warnings the defendant received satisfied *Miranda*. With respect to his right to counsel, the accused was told: "You have the right to the presence of an attorney during questioning and if you cannot afford an attorney, one will be appointed before questioning. Do you understand those rights?" *Id.* at 1148. The Ninth Circuit determined that the defendant "need not have been informed explicitly of his right to consult with counsel prior to questioning," and that "[t]he *Miranda* warnings at issue here adequately conveyed notice of the right to consult with an attorney before questioning." *Id.* at 1151. Notably, the court disagreed with the defendant's literal interpretation of his warnings as appointing an attorney for him "immediately before questioning for the sole purpose of being present during questioning." *Id.* "A more reasonable

14

reading of the warnings," according to the Ninth Circuit, was that "Loucious could consult with that attorney before questioning." *Id.*

Even before *Loucious*, courts in the Ninth Circuit held that warnings similar to those in *Loucious* sufficed. *See United States v. Streck*, 1:12-CR-157-BLW, 2012 WL 6022431, at *4 (D. Idaho Dec. 4, 2012) (the following warning was sufficient: "(1) You also have the right to have an attorney present during your questioning, and (2) If you cannot afford one, the courts will appoint one for you before any questioning takes place if you wish one.") (internal quotation marks omitted); *see also United States v. Davis*, No. 12 CR 289J, 2016 WL 3092110, at *1 (D. Nev. June 1, 2016). Also, as previously noted, an Illinois appellate court, prior to this case, found *Miranda* warnings about the right to an attorney sufficient when they informed the suspect "that he had the right to an attorney and have him present during any questioning." *People v. Martinez*, 867 N.E.2d 24, 27 (Ill. App. Ct. 2007).

Considering the cases that have found pre-interrogation warnings very similar to Petitioner's sufficient under *Miranda*, this Court cannot say the state appellate court's decision in this case was unreasonable. This Court is "satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions." *Felton*, 926 F.3d at 464. Though *Miranda* may have sought to clearly establish what information a suspect must receive before he can intelligently waive his Fifth Amendment right, the Court stopped short of requiring a "talismanic incantation," *Prysock*, 453 U.S. at 359, and has left open "the potential for reasoned disagreement among fair-minded judges" as to whether omitted language can be reasonably discerned from the expressly stated warnings. *Renico*, 559 U.S. at 776. The Supreme Court may later hold that warnings similar to Petitioner's do not suffice. But given the current cases, this Court cannot say the state court decision was unreasonable.

For the reasons stated above, Petitioner has not satisfied the requirements of § 2254(d) with respect to the state appellate court decision. His § 2254 petition is thus denied.

## NOTICE OF APPEAL RIGHTS AND CERTIFICATE OF APPEALABILITY

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal in this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a motion pursuant to Rule 59(e) or Rule 60(b) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

## CONCLUSION

Petitioner's habeas corpus petition (Dkt. 1.) is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is

instructed to: terminate Jacqueline Lashbrook as Respondent; enter Anthony Wills, Menard Correctional Center's current warden, as Respondent; alter the case caption to *Ruiz v. Wills*; and enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

**SO ORDERED.**            **ENTERED: December 2, 2020**

_____
**HON. JORGE ALONSO**
**United States District Judge**